DISTCO LAMINATING, INC. v UNION TOOL CORPORATION

1. SALES—CONTRACTS—RESCISSION OF CONTRACTS—USE BY PURCHASER—"OWNERSHIP LIKE" USE—FINDING OF FACT—APPEAL AND ERROR.

A finding by a trial court, in an action for rescission of a contract to purchase a laminating machine, that the plaintiff's use of the machine *after commencement of the action* was not sufficient to bar rescission, although the use was admittedly "ownership like", will not be set aside where the finding was not clearly erroneous.

2. APPEAL AND ERROR—FINDINGS OF FACT—TRIAL COURT.

Findings of fact by a trial court are given great weight and are not set aside unless clearly erroneous.

3. SALES—CONTRACTS—RESCISSION OF CONTRACTS—USE BY PURCHASER—SUBSTANTIAL USE—REMEDY OF DEFECTS—STATUTES.

A purchaser's substantial use of a machine following the purchaser's commencement of a suit to rescind the contract wherein the machine was purchased may not be so substantial as to equal acceptance of the machine through "an act inconsistent with the seller's ownership"; a buyer's efforts to remedy defects do not constitute a waiver of the right of rescission (MCLA 440.2606[1][c]; MSA 19.2606[1][c]).

4. SALES—UNIFORM COMMERCIAL CODE—CONSTRUCTION—POLICIES—STATUTES.

The Uniform Commercial Code is to be liberally construed so as

REFERENCES FOR POINTS IN HEADNOTES

[1, 3] 67 Am Jur 2d, Sales §§ 215, 719.
   Use of article by buyer as waiver of right to rescind for fraud, breach of warranty, or failure of goods to comply with contract. 41 ALR2d 1173.
[2] 5 Am Jur 2d, Appeal and Error § 839.                 ·
[4] 67 Am Jur 2d, Sales § 19.
[5] 5 Am Jur 2d, Appeal and Error § 566.
[6] 46 Am Jur 2d, Judgments § 142.
[7] 67 Am Jur 2d, Sales § 669.
[8] 46 Am Jur 2d, Judgments § 117.

to promote its underlying purposes and policies (MCLA 440.1102 et seq.; MSA 19.1102 et seq.).

5. APPEAL AND ERROR—MATTERS NOT RULED UPON BY TRIAL COURT.
Generally, matters not ruled upon by the trial court will not be acted upon for the first time on appeal.

6. MOTIONS—DIRECTED VERDICT—JUDGMENT NOTWITHSTANDING THE VERDICT—PREREQUISITES—COURT RULES.
A motion for a directed verdict is a prerequisite to a motion for a judgment notwithstanding the verdict (GCR 1963, 515.2).

7. SALES—CONTRACTS—RESCISSION OF CONTRACTS—INTEREST EXPENSES —RECOVERY OF INTEREST EXPENSES—STATUTES.
Interest expenses incurred by a purchaser are not recoverable from the seller in the purchaser's action to rescind the sales contract because the item purchased failed to meet contract specifications where the seller did not have reason to know of the purchaser's borrowing to make the purchase (MCLA 440.2714; MSA 19.2714).

8. MOTIONS—COURT OF APPEALS—JUDGMENT NOTWITHSTANDING THE VERDICT—EVIDENCE—NONMOVING PARTY.
The Court of Appeals, in reviewing a motion for a judgment notwithstanding the verdict, should view the evidence in the light most favorable to the party against whom the motion is directed.

Appeal from Kent, John T. Letts, J. Submitted February 9, 1978, at Grand Rapids. (Docket No. 31469.) Decided March 6, 1978.

Complaint by Distco Laminating, Inc., against Union Tool Corporation seeking rescission of a contract and for damages for breach of contract. Judgment for plaintiff rescinding the contract and awarding nominal damages. Defendant appeals. Plaintiff cross-appeals. Affirmed.

*Murray & Mroz* (by *James R. Hulbert),* for plaintiff.

*Smith, Haughey, Rice & Roegge* (by *Lance R. Mather),* for defendant.

Before: J. H. GILLIS, P. J., and R. B. BURNS and ALLEN, JJ.

ALLEN, J. Defendant appeals of right from a judgment which rescinds a contract for the purchase by plaintiff of a vinyl laminating machine, orders return to the defendant of the machine and orders defendant to return $103,819.50 paid by plaintiff for said machine. Plaintiff cross-appeals from that part of the judgment which awarded plaintiff nominal damages of $1.

Plaintiff is engaged in the vinyl laminating business at Grand Rapids, Michigan. Defendant is a manufacturer of laminating machines at Warsaw, Indiana. On September 24, 1973, plaintiff placed an order with defendant for the purchase of a fully automated machine for $115,335. The machine is some 70 feet long, 9 feet high and 64 inches wide. It is made up of several components allowing it to perform separate but related functions. One part of the machine brushes and cleans substrate boards. Another part applies glue to the separate pieces of substrate boards which travel the length of the machine on a conveyer belt. A third portion of the machine presses vinyl onto the substrate boards. Specifications called for production at a rate from 50 to 150 lineal feet per minute.

*Events prior to suit for rescission*

When the machine was completed in July 1974, defendant contacted plaintiff who had four of its trucks pick up the machine at defendant's Warsaw plant and deliver it to Grand Rapids. During August, 1974, it was aligned and anchored, and electrical and compressed air outlets arranged for. In September, an employee of defendant's plant connected the control panel and commenced test runs.

The runs were unsuccessful and there followed some 2-1/2 months of adjustments, changes and various modifications made both by plaintiff and defendant. Though the test runs were unsuccessful, each party blamed the other for the failure of the machine to operate properly. On November 26, 1972, plaintiff wrote defendant threatening rescission and requesting return of the money paid for the machine. Defendant again dispatched technicians to Grand Rapids where additional changes and modifications were made in the machine but all to no avail. On January 29, 1975, plaintiff filed suit for rescission and return of the monies paid on the contract price.

*Events following suit for rescission*

Following filing of the suit for rescission, plaintiff continued in attempts to make the machine operative. A new electric motor and a new hood were installed on that portion of the machine which performed the cleaning function. The dust collector motor was wired so as to become operative. A witness for plaintiff testified that the machine was used to clean some 1400 substrate boards 49 inches by 104 inches in size. This function was performed with the machine running at 5 to 6 feet per minute. At this speed, the cleaning operation would require 33-1/3 hours to complete. However, had the machine functioned at the speed for which it was designed, the cleaning operation could have been performed in approximately eight hours.

Multiple slits on a newly installed conveyor belt indicated that the machine had been used to laminate vinyl to boards. However, the evidence did not indicate whether such use of the machine was for production or for testing. There was also testi-

mony that plaintiff purchased the machine primarily, though not exclusively, to laminate boards for Herman Miller Corporation but that in October, 1974, Herman Miller Corporation stopped purchasing boards from plaintiff because the boards did not meet fire rating requirements.

Trial was by jury but because of the equitable nature of the suit, the jury was instructed that on the issue of rescission its verdict would be advisory but on the issues of damages its verdict would be controlling. The jury returned a verdict in favor of plaintiff on the claim for rescission and, as to damages, returned a verdict of $1 in favor of plaintiff and denied defendant's counter-claim for the balance of the purchase price and damages. The comprehensive written opinion of the trial court reads in pertinent part:

"It is also indicated that as late as February 1975 after the commencement of this action there was evidence of equipment being installed on the machine by the plaintiff, subsequent to a request (by the latter) for rescission, and *that there was substantial use of the machine by plaintiff after the commencement of this action.* The Court is also convinced that the cut marks made in the conveyor belt were caused by the plaintiff's use of tools on material moving over the belt; although, there was conflicting testimony that 'machine has not been used, not to my knowledge' (testimony of Phillip Bruce Mc Keel, an employ *[sic]* of the plaintiff).

"The Court finds, that although the evidence presented in this case does demonstrate that after plaintiff attempted to rescind his contract with the defendant it did treat the defendant's machinery in an ownership like manner; *such use was not sufficient, in the opinion of this Court, to bar rescission."* (Emphasis supplied.)

The litigants agree that the present dispute is governed by the Uniform Commercial Code, 1962

PA 174; MCLA 440.1101 *et seq.;* MSA 19.1101 *et seq.,* but disagree as to which section of the code controls. Plaintiff contends that MCLA 440.2601; MSA 19.2601 which provides that a buyer may reject goods where the goods fail to conform to the contract applies. In support of this position, plaintiff points out that the trial court found that the machine did not conform to the contract. On the other hand, defendant argues that MCLA 440.2606; MSA 19.2606[1] which provides that a buyer accepts goods when the buyer "does any act inconsistent with the seller's ownership" governs. Plaintiff's actions following filing of the suit for rescission, says defendant, were so substantial as to constitute legal acceptance. Further, defendant argues, since the trial court itself found the subsequent use "substantial" and not in mitigation of damages, the trial court erred as a matter of law in granting rescission. Our examination of the file and transcript leads us to reject defendant's skillfully presented arguments.

There was abundant evidence at trial that the laminating machine did not conform to contract specifications. The trial court so found. The trial court also found that plaintiff's use of the machine following commencement of the action for rescission, though admittedly "ownership like", was not sufficient to bar rescission. We agree. Findings of

---

[1] "Sec. 2606. (1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of section 2602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; or

(c) *does any act inconsistent with the seller's ownership;* but if such act is wrongful as against the seller it is an acceptance only if ratified by him.

"(2) Acceptance of a part of any commercial unit is acceptance of that entire unit." (Emphasis supplied.) MCLA 440.2606; MSA 19.2606.

fact by a trial court are given great weight and are not set aside unless clearly erroneous. GCR 1963, 517.1; *Ford v Howard,* 59 Mich App 548, 552; 229 NW2d 841 (1975). Defendant errs in concluding that whenever a buyer's conduct over the goods following commencement of rescission is "substantial" and not in mitigation of damages, such conduct as a matter of law becomes "an act inconsistent with the seller's ownership" as that phrase is used in subsection 606(1)(c) of the Uniform Commercial Code. Post-rescission conduct may still be substantial and yet not be so substantial as to equal acceptance. See Anno: *Use of Goods by Buyer as Constituting Acceptance Under UCC § 2-606(1)(c),* 67 ALR3d 363. Cases cited in that annotation which hold that use constitutes acceptance involve considerably more use than appears in the instant case.

With the single exception of the cleaning operation of some 1400 substrate boards, plaintiff's post-rescission action was directed towards making the equipment function rather than use of the equipment in production. With over $103,000 invested in the machine it was not abnormal or unusual to make one more effort to make the machine work. A buyer's efforts to remedy defects do not constitute a waiver of the right of rescission. 46 Am Jur, Sales, § 765, p 897. See also *MacLaren v Dermody White Truck Co,* 9 Mich App 402; 157 NW2d 459 (1968). The single production run of 1400 boards involving an estimated 33-1/2 hours productive use of the machine is minimal when compared with the reasonably expected lifetime productivity of the machine. Comparatively, it is one spin around the earth of a space capsule designed to orbit the globe a year in time. Plaintiff's purchase of the exhaust fan, enlarged motor and other post-

rescission suit equipment modifications involved efforts by the plaintiff to make the equipment perform to contract specifications. Slits in the conveyor belt were not proved to have resulted from vinyl-lamination production as opposed to testing of the machine. Furthermore, plaintiff's testimony that its business had substantially increased between the date it placed the order for the machine in September 1973, and the date rescission was commenced in January 1975, offset defendant's argument that plaintiff rejected the machine because of the loss of the Herman Miller account in 1974.[2]

Greater use by the buyer following the buyer's rejection of the goods or article purchased than appears in the instant case has been found not to constitute acceptance in several Michigan cases. In *Valley Die Cast Corp v ACW Inc,* 25 Mich App 321; 181 NW2d 303 (1970), defendant continued to use until May a defective car wash system which defendant had notified the seller it was rejecting in January. Our Court held that the buyer's use after rejection did not necessarily constitute acceptance under MCLA 440.2606; MSA 19.2606 and that the ultimate fact of acceptance or rejection under the facts of that case was for the jury to determine. In *Minsel v El Rancho Mobile Home Center, Inc,* 32 Mich App 10; 188 NW2d 9 (1971), plaintiff-buyer in September tendered notice of intent to rescind the purchase contract but did not vacate the mobile home until some six weeks later. Our Court first noted that the Uniform Commercial Code was to be liberally construed and then concluded that the mere six weeks of continued occupancy did not legally constitute an exercise of

[2] Testimony by plaintiff showed that its gross business for 1973 was $1.75 million; for 1974, $3.0 million; for 1975, $2.4 million and for the first quarter of 1976, $1.1 million.

ownership by the buyer of the goods purchased. Similar decisions finding that post-rescission continued use of otherwise defective purchased equipment does not constitute acceptance, are found in *Stroh v American Recreation & Mobile Home Corp of Colorado,* 35 Colo App 196; 530 P2d 989 (1974), and *Moore v Howard Pontiac-American, Inc,* 492 SW2d 227 (Tenn App, 1972).[3] In our opinion the comparatively limited use of the laminating machine in the instant case is an act substantially less "inconsistent with the seller's ownership" than the buyers' actions in *Minsel, Stroh* and *Moore.*

## Plaintiff's cross-appeal for damages

Plaintiff has cross-appealed from the failure of the trial court to rule favorably on plaintiff's motion for judgment notwithstanding the verdict.[4] According to plaintiff, it is totally inconsistent and against the great weight of the evidence to allow rescission but deny reimbursement for the expenses incurred as a result of defendant's breach of contract. Expenses of $26,274.02 were presented at trial, of which $12,392.85 was incurred in electrical connections, a dust collection system, an

---

[3] In both *Stroh* and *Moore,* the court did find that the buyers' continued use of the mobile home and automobile depreciated the value of the purchased article and allowed the seller an offset in plaintiffs' damages. In the case before us we do not find that the limited use of the machine for the short period of time involved following suit for rescission depreciated the value of the machine.

[4] Plaintiff's motion was not directly ruled upon by the trial court. It was mentioned but never passed upon in the court's written opinion. It was neither mentioned nor acted upon in the formal order of judgment December 6, 1976, which was drafted by plaintiff's attorney. Generally, matters not ruled upon by the trial court will not be acted upon for the first time on appeal. *Three Lakes Association v Whiting,* 75 Mich App 564; 255 NW2d 686 (1977). However, we do not base our rejection of the cross-appeal on this technicality since it is clear to us that, at least inferentially, the trial court did deny plaintiff's motion.

overhead crane and pneumatic power connection costs, and $13,881.17 represented interest paid to the date of trial to the Michigan National Bank for the loan to purchase the machinery. For reasons in part procedural and in part substantive, we reject the cross-appeal.

GCR 1963, 515.2 provides:

"Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the moving party may move * * * to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion for a directed verdict."

A motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict. *Smith-Douglass, Division of Borden Chemical v Walch,* 391 Mich 201, 204–205; 215 NW2d 142 (1974). In the instant case no motion for a directed verdict was made.

Nor is this a situation falling within the exception to Rule 515.2[5] where, upon a new trial, no different result could be reached. The necessity for the expenditures made by the plaintiff was sharply contested by the defendant who claimed that plaintiff's modifications and adjustments totaling $12,392.85 were made without consultation with the defendant's experts and that in many instances the plaintiff dragged its feet and failed to cooperate with the defendant. On cross-examination, plaintiff's witnesses admitted that the purchase of the hoist, the panel control wiring and some related expenditures were improvements which could be used in other aspects of plaintiff's business. It is very possible that the jury believed

[5] *See* 2 Honigman & Hawkins, Mich Court Rules Annotated, 1977 Supp, p 156.

defendant's testimony as to damages even though the jury also concluded that the machine failed to meet contract specifications.

For similar reasons we are not persuaded that the jury erred in denying plaintiff a return of interest charges of $13,881.17 on the loan from the bank. Such charges are recoverable as damages under § 2714 of the Uniform Commercial Code, MCLA 440.2714; MSA 19.2714, if the seller had reason to know of the borrowing. *Carl Beasley Ford, Inc v Burroughs Corp,* 361 F Supp 325 (ED Pa, 1973). Based on the limited testimony in this case we cannot conclude that Union Tool had reason to know Distco required a loan to make payment for the article purchased.[6]

In reviewing a motion for judgment notwithstanding the verdict, this Court must view the evidence in the light most favorable to the party against whom the motion is directed. *Savage v Peterson Distributing Co, Inc,* 379 Mich 197; 150 NW2d 804 (1967). Even the trial judge found as a fact that plaintiff's alleged damages resulted from alterations made without prior consultation with defendant. In the fact of such testimony and findings, we cannot find that the trial court erred in failing to grant plaintiff's motion for judgment notwithstanding the verdict.

Affirmed, no costs, neither party having prevailed in full.

---

[6] Nor are we persuaded that knowledge of borrowing may be imputed under the "it follows from the normal course of events" doctrine set forth in *Certain-Teed Products Corp v Goslee Roofing & Sheet Metal, Inc,* 26 Md App 452, 473; 339 A2d 302, 314–315 (1975). If the "normal course of events" theory is inapplicable, then the question of whether interest paid on a loan required to pay for the purchase is recoverable is a question entirely for the jury to decide according to the equities of the situation. *A & A Masonry Contractors, Inc v Polinger,* 259 Md 199; 269 A2d 566 (1970). In the instant case, the jury determined that the interest was not recoverable.