[No. C006930. Third Dist. Mar. 29, 1991.]

U.S. ROOFING, INC., Plaintiff, Cross-defendant and Respondent, v. CREDIT ALLIANCE CORPORATION et al., Defendants and Appellants;
LEASING SERVICE CORPORATION, Defendant, Cross-complainant and Appellant.

COUNSEL

Hefner, Stark & Marois, Steven R. Crooks, Murphy, Pearson, Bradley & Feeney, James A. Murphy, Mark E. Ellis and Lynn Shapiro for Defendants and Appellants and for Defendant, Cross-Complainant and Appellant.

Hoseit & Koelewyn, H. L. Koelewyn and John A. Sheehan for Plaintiff, Cross-defendant and Respondent.

OPINION

MARLER, J.—This case presents the question of what remedies are available to a lessee-buyer in the purchase and sale of equipment financed by a lease arrangement when the equipment is defective and the financing lessor has disclaimed all express and implied warranties to the equipment. We hold that a financing lessor may validly disclaim all warranties, provided the lessee-buyer has an adequate remedy against the manufacturer or supplier for any defect in the equipment, and it is the role of the trial court, not the jury, to determine whether the disclaimer is valid. We further hold that where the disclaimer is valid and the equipment conforms to all provisions of the lease relating to the equipment, such as the description of the equipment and the terms of delivery, so that the equipment cannot be considered nonconforming to the lease, the remedy of revocation of acceptance is not available as against the financing lessor even though the equipment is defective.

Because of dissatisfaction with a crane it intended to purchase through lease financing, U.S. Roofing, Inc. (U.S. Roofing) stopped making payments on the lease and brought suit against National Crane, the manufacturer, Liquid Asphalt Systems (LAS), the supplier, Steve Jones, its president, and Credit Alliance Corporation and Leasing Service Corporation (LSC), the leasing company, for breach of warranty.[1] LSC filed a cross-complaint for breach of the lease, seeking a deficiency judgment. A jury determined that both LAS and LSC were liable to U.S. Roofing for different amounts. The jury also found for U.S. Roofing on LSC's cross-complaint for breach of the lease. National Crane was not held liable. Both LAS and LSC appeal. LAS contends the judgment against it cannot stand as a matter of law, in effect claiming there is insufficient evidence. We affirm this judgment as to LAS's liability to U.S. Roofing, but remand the case for a new trial limited to

---

[1] The motion to quash summons of Steve Jones for lack of jurisdiction was granted. Before trial the parties stipulated that Credit Alliance Corporation need not be considered a party defendant, but that it would be jointly and severally liable for any judgment against the related entity LSC. LSC has appealed on behalf of both itself and Credit Alliance Corporation. All references to LSC herein shall apply to both entities where appropriate.

damages. LSC attacks the legal basis of the judgment against it, contending the trial court erred (1) when it submitted to the jury the question of whether the disclaimer of warranties in the lease was unconscionable, (2) when it refused to give LSC's specific instruction on revocation of acceptance, and (3) when it gave confusing or misleading instructions on the disclaimer. LSC further contends the undisputed evidence shows it is entitled to a deficiency judgment of $261,850.60 for the balance of the lease payments, including costs, interest and late charges. We reverse the judgments against LSC on both the complaint and the cross-complaint and direct the entry of a judgment in favor of LSC on its cross-complaint in the amount of $125,354.60.

## Factual and Procedural Background

U.S. Roofing is a roofing contracting firm specializing in government roofing jobs. In 1983 U.S. Roofing was awarded a contract for the Alameda Naval Air Station in Oakland. U.S. Roofing determined that a crane would be needed to complete the work and began to contact dealers about purchasing a crane.

Henry Jessup of U.S. Roofing contacted Steve Jones of LAS and discussed his needs for the job. They entered into negotiations for the purchase of a truck-mounted crane. An agreement on the type and price of a crane was reached and U.S. Roofing sent LAS a $1,000 earnest money deposit. This was followed by a second deposit of $7,402.19. U.S. Roofing relied on LAS to arrange financing. LAS suggested a lease arrangement. A lease has advantages over conventional financing; there is a lower initial capital outlay and the lease payments can be deducted currently as expenses which results in a greater tax savings than depreciating the equipment. Of the two leasing companies to whom LAS referred U.S. Roofing, U.S. Roofing selected LSC and they entered into a lease agreement. Under the lease agreement U.S. Roofing selected the equipment and the supplier (LAS). LSC purchased the equipment and leased it to U.S. Roofing for a period of 57 months. An amendment to the lease gave U.S. Roofing an option to purchase the equipment at the end of the term of the lease for $8,049. Included in the lease agreement, in all capital letters in red print just above the signature line, was a disclaimer which read: "THE EQUIPMENT IS LEASED HEREUNDER AS-IS, AND LESSOR MAKES NO EXPRESS NOR IMPLIED NOR STATUTORY WARRANTIES AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PURPOSE."

Also included in the lease was a late payment clause which read: "Should Lessee fail to pay when due any part of the rent herein reserved or any other sum required to be paid to Lessor by Lessee, Lessee shall pay to Lessor a

late charge of 1/15th of 1% per day on such delinquent payment, but not to exceed, however, the maximum permitted by applicable law, from the date when such payment was due until paid, and expenses of collection, including attorneys' fees. Lessee hereby irrevocably authorizes any attorney of any court of record to appear for and confess judgment against Lessee (except in any jurisdiction where such action is not permitted by law) for all unpaid amounts due hereunder, plus expenses and 15% added for attorneys' fees, without stay of execution, and Lessee hereby waives the issue of process, all rights of appeal and relief from any and all appraisement, stay or exemption laws then in force."

The crane was delivered on August 24, 1983. U.S. Roofing never returned the certificate of acceptance because it did not receive the full roofer's package it ordered. Nonetheless, LSC paid the full purchase price of $116,000, less the two deposits, to LAS.

Immediately, U.S. Roofing experienced problems with the crane. The stabilizing outriggers lifted off the ground, frightening those operating the crane. The crane leaned against the building and failed to lift to full capacity. U.S. Roofing contacted LAS about the problems and the crane was sent to Coast Crane for repairs, which included torquing the mounting bolts and adding counterweights. After these repairs, problems continued. On a slight grade the crane could not go over 25 miles per hour. There were still problems with lifting a capacity load and the crane leaked hydraulic fluid. In addition, welds on the mounting brackets were cracked and gussets were missing. The crane was unsafe in this condition; U.S. Roofing stopped using it and rented another crane to complete the job. The crane was sent back to Coast Crane for repairs in late October; the repairs were not completed until almost the end of the year.

In the meantime U.S. Roofing decided it did not want the crane and sent a letter to LAS, with a copy to LSC, to revoke the lease. U.S. Roofing then stopped making lease payments. LSC, treating the nonpayment as a breach of the lease, invoked the lease's acceleration clause, repossessed the crane and sold it at public sale to itself for $60,000. The crane was later sold to Bacon Company for $57,500.

U.S. Roofing then brought a lawsuit against National Crane Company (the manufacturer of the crane), LAS and LSC for breach of warranties. LSC cross-complained for breach of the lease and sought a deficiency judgment.

At trial there was considerable testimony about the problems with the crane. The mechanic who worked on the crane affirmed the problems, but

opined that most were caused by misuse. He testified the crane tested stable and lifted 125 percent of capacity.

William Bagby of LSC testified in support of LSC's claim for a deficiency judgment. On November 22, 1983, LSC made a demand on U.S. Roofing for the accelerated unpaid balance of the lease, including late payments and taxes, in the amount of $142,199. The crane was repossessed in late December or early January. Mr. Bagby explained after attempts at a private sale of the crane failed, LSC set up a public sale. Notices of the sale were published and sent to U.S. Roofing, as well as to potential buyers. LSC purchased the crane at the public auction for $60,000.

Mr. Bagby also testified about the calculation of the deficiency judgment. As of the date of the auction the deficiency was $125,354.60, which was determined by computing the balance due (lease payments, late charges and taxes) and subtracting the net proceeds of the sale. He then updated the deficiency to the time of trial by calculating the late charges of $76 per day to date. The late charges totalled $136,496; the total deficiency was $261,850.60.

Neither U.S. Roofing nor LAS challenged the commercial reasonableness of the public sale or the calculation of the deficiency. The trial court was concerned about continuing to assess the late charge after the crane was repossessed and sold.

After the conclusion of plaintiff's case-in-chief, all of the defendants moved for a nonsuit; the motions were denied. At the end of the trial the defendants moved for a directed verdict and these motions were also denied.

An eight-person jury returned a verdict on the complaint in favor of U.S. Roofing by a vote of six to two; it found against LAS in the amount of $42,555.76 and against LSC in the amount of $10,734.19.[2] The verdict on the cross-complaint was in favor of U.S. Roofing, by a vote of seven to one.

LSC moved for a judgment notwithstanding the verdict or a new trial. The motion was denied.

Both LAS and LSC appealed.

---

[2] It is unclear how the jury determined these amounts. U.S. Roofing requested damages of $13,934 for amounts paid for the crane, $82,288 for expenses incurred as a result of delay caused by the crane's deficiencies, and $146,605 for amounts spent for replacement equipment. Because of the difficulty in determining how the jury determined and apportioned damages we remand for a new trial on damages as discussed in part V.

## Discussion

Both LAS and LSC contend the jury erred in its verdicts. LAS objects to the jury's findings of the facts, maintaining that the factual determinations are incorrect as a matter of law. LSC, on the other hand, claims the jury was erroneously instructed. We begin with LAS's contentions and find sufficient evidence to sustain the jury's verdict. Then we turn to the points raised by LSC. We find the trial court erroneously submitted a question of law—whether the disclaimer of warranties was unconscionable—to the jury. We find the disclaimer is not unconscionable and so reverse the judgment and direct judgment to be entered in favor of LSC.

### I

LAS contends the jury misapplied the facts to the law and erroneously concluded that LAS was liable in part for damages suffered by U.S. Roofing. LAS takes the position that the factual determinations underlying the ultimate determination that LAS is liable could not be made as a matter of law, contending in effect there is insufficient evidence to support the jury verdict.

### A

█ LAS asserts that it is not liable for any breach of warranty as a matter of law. It puts forward several reasons to support this position. First, pointing to the lack of any written agreement between LAS and U.S. Roofing for the sale of the crane, LAS claims it cannot be liable for breach of warranty because there is no privity of contract between LAS and U.S. Roofing. Vertical privity is a prerequisite in California for recovery on a theory of breach of the implied warranties of fitness and merchantability. (*Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 695-696 [268 P.2d 1041]; *Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 656 [243 Cal.Rptr. 815].)

In response to LAS's motion for a nonsuit, based in part on lack of privity, U.S. Roofing argued that the sale of the crane was between LAS and U.S. Roofing, with LSC providing the financing. The trial court denied the motion and determined that the identity of the parties to the sale was a factual issue for the jury to decide.[3] The jury was instructed that privity of

---

[3] LAS argues whether there was privity was an issue of law for the court to decide and cites *Thomas* v. *Olin Mathieson Chem. Corp.* (1967) 255 Cal.App.2d 806, 810 [63 Cal.Rptr. 454]. In *Thomas* a disappointed hunter, who missed killing a Bengal tiger when his gun failed to discharge, brought suit against the manufacturer of the gun. The court held the demurrer to the causes of action based on negligence and implied warranty was properly sustained

contract between plaintiff and a defendant was necessary to find such defendant liable for a breach of warranty.

LAS asserts that since the evidence showed LAS sold the crane to LSC, not to U.S. Roofing, as a matter of law there was no privity between LAS and U.S. Roofing. Accordingly, LAS cannot be liable for breach of an implied warranty. This argument focuses solely on the paper contract; it ignores the considerable testimony regarding the direct dealings between LAS and U.S. Roofing for the sale and purchase of the crane. These parties had an oral agreement for the sale of the crane, supported by a deposit of $1,000, followed by a second deposit. LAS admits it made at least one express warranty as to the crane. When U.S. Roofing experienced problems with the crane, it contacted LAS for relief. Repairs on the crane were arranged and paid for by LAS. From this evidence the jury could find the necessary privity to support liability for breach of an implied warranty.

## B

■ LAS asserts that it made no express warranty that was breached and further that all warranties, express or implied, were disclaimed. The verdict does not indicate whether the jury found the breached warranty to be express or implied. The evidence supports a finding that the implied warranties of merchantability and fitness for a particular purpose were breached; therefore, the lack of an express warranty would not aid LAS's position. A disclaimer of warranties was made, but the disclaimer appeared in the lease agreement between LSC and U.S. Roofing. The lease also provided that the lessee could request the lessor to ask the supplier to authorize the lessee to enforce in its name all warranties made by the supplier to either the lessor or the lessee. LAS was not a party to that agreement. There was no evidence that LAS disclaimed any warranties.

## C

■ LAS urges that U.S. Roofing's claim for breach of warranty was barred by U.S. Roofing's misuse of the crane. The jury was instructed that the plaintiff could not recover if its damages were caused by its improper use of the equipment.[4] LAS argues the evidence shows conclusively that the

---

because the face of the complaint showed there was no privity between the hunter and the manufacturer. (*Ibid.*) That is not the case here. The complaint alleged the defendants, including LAS, sold the crane to U.S. Roofing. Thus, there was a factual question as to who the seller was, and the court instructed the jury on this issue.

[4] The jury was instructed as follows: "Any warranty of goods involved in this case was based on the assumption that they would be used in a reasonable manner, appropriate to the purpose to which it was intended. If you should find that whatever injury or damage the

problems with the crane were caused by U.S. Roofing's misuse. The mechanic who repaired the crane testified that he thought the crane showed signs of misuse, particularly overloading. The weight to which his opinion testimony was entitled was a question for the jury to decide. (Evid. Code, § 312; *Hart* v. *Wielt* (1970) 4 Cal.App.3d 224, 230 [84 Cal.Rptr. 220].) There was evidence that the problems continued after the first repair when there was no overloading and that the problems were caused in part by poor welding in the mounting of the crane and the failure to use gussets in certain areas of the crane. Further, there were problems with hydraulic fluid leaking and inability to travel at highway speeds that were not tied to misuse. There was substantial evidence the crane's problems were not the result of misuse.

## D

▇ LAS contends it cannot be liable for breach of warranty because U.S. Roofing refused to allow it to cure any nonconformity in the crane. The court instructed the jury that the seller had the right to cure any nonconformity before the buyer could revoke its acceptance.[5] We question whether these instructions were proper. LAS claims it has the right to cure under California Uniform Commercial Code section 2508. (All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.) By its terms, section 2508 applies only where the buyer seeks to reject acceptance of goods, not where it seeks to revoke the buyer's acceptance.[6] Section 2508 has not been interpreted in California;

---

plaintiff suffered in this case proximately resulted from its improper use of the goods involved, then plaintiff cannot recover damages for breach of warranty."

"A buyer is not entitled to revoke acceptance and obtain damages where a buyer's improper use of a product is, itself, the proximate cause of the product's substantial impairment."

[5] The court instructed the jury as follows: "The seller has a right to cure or repair nonconformities or defects which the buyer claims exist in the goods prior to the buyer rejecting or revoking acceptance of the goods.

"A buyer cannot unreasonably refuse to allow the making of repairs or adjustments that reasonably appear adequate to remove the nonconformity in the goods.

"Where a buyer unreasonably refuses to accept the seller's repair or cure of nonconformities in the goods, the buyer is barred from claiming damages based on breach of warranty.

"Where a buyer rejects, as nonconforming or defective, goods delivered by the seller, which the seller has reasonable grounds to believe would be acceptable with or without money allowance, the seller has the right, if he timely notifies the buyer, to have a further reasonable time to substitute conforming or nondefective goods.

"The seller's right to cure nonconforming goods includes the situation in which the seller makes repairs or adjustments to the goods in order to correct or repair any nonconformity so that the goods conform to any warrant."

[6] Section 2508 reads: "(1) Where any tender or delivery by the seller is rejected because nonconforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

"(2) Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he

other states, however, have interpreted this section of the Uniform Commercial Code. Although there are cases holding that a seller has the right to cure when faced with the buyer's revocation of acceptance, these cases seem to be concerned that the buyer is acting unreasonably in seeking to revoke its acceptance, because the defect is minor and easily corrected or the buyer did not act promptly in revoking the acceptance. (See *Wilson* v. *Scampoli* (D.C. 1967) 228 A.2d 848 [buyer refused to allow seller to remove television from its chassis to determine cause of color malfunction]; *Reece* v. *Yeager Ford Sales* (1971) 155 W.Va. 453 [184 S.E.2d 722] [complaining of minor defects in car not affecting performance (such as paint and broken latch), buyer sought to revoke acceptance after considerable use of the car where warranty provided remedy of repair].) Other courts have looked to the language of section 2508 and determined that the right to cure does not apply in the context of revocation of acceptance. (*Gappelberg* v. *Landrum* (Tex. 1984) 666 S.W.2d 88, 91; *Jensen* v. *Seigel Mobile Homes Group* (1983) 105 Idaho 489 [668 P.2d 65, 69-70]; see also White & Summers, Uniform Commercial Code (3d. ed. 1988) § 8-5, p. 425.) We find these cases, which rely on the language of the statute, more persuasive and believe that the right to cure under section 2508 does not apply to situations where the buyer seeks to revoke its acceptance under section 2608.

This conclusion does not mean that there is no right to cure in the context of a revocation of acceptance. Section 2608 provides a separate right to cure in certain situations. Section 2608 provides in part: "The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it [¶] (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or [¶] (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances. . . ."

The record does not reveal under which subsection the jury found the revocation of acceptance to fall. It would appear that U.S. Roofing did not discover the defects until it began to use the crane. However, the evidence supports a finding that the revocation of acceptance was under subdivision (a), which permits a cure. This evidence includes LAS's response when U.S. Roofing first complained of problems with the crane not to worry because the crane was still under warranty and LAS's arranging for the first repair. The question remains whether there is sufficient evidence to support a finding that LAS did not seasonably cure the nonconformities. Among the

---

seasonably notifies the buyer have a further reasonable time to substitute a conforming tender."

factors the jury may consider in determining this question is the inconvenience to the buyer while the repair is made. (*Wilson* v. *Scampoli, supra*, 228 A.2d at p. 850.) Here, U.S. Roofing rented another crane to complete its job. Another factor is whether the nonconformities in the goods have undermined the buyer's confidence in the goods. (*Welch* v. *Fitzgerald-Hicks Dodge, Inc.* (1981) 121 N.H. 358 [430 A.2d 144, 149].) The jury could have determined the unsafe condition of the crane undermined U.S. Roofing's confidence in the crane after the first repair failed to correct the problem. Under these circumstances a jury could have found that LAS did not seasonably cure the nonconformities and thus revocation of acceptance without waiting for additional repairs was reasonable.

## II

LAS contends the evidence was insufficient as a matter of law to show a substantial impairment in the value of the crane to justify a revocation of acceptance. At the conclusion of the presentation of evidence LAS moved for a directed verdict, contending there was no evidence the crane was unstable. The trial court denied the motion, noting that the jury could consider evidence the crane leaned against the building on the issue of stability. There was other evidence that supported a finding that the crane's value was substantially impaired, including evidence it was unsafe, it had problems lifting a capacity load, there were cracks and poor welds in the mounting, and it could not go over 25 miles per hour on slight grades. But perhaps the strongest evidence of impairment of value was the difference between the amount the crane originally sold for and the amount it brought on resale. The original purchase price was $116,000; on resale the price was only $60,000. From this difference the jury could infer the defects in the crane caused a substantial impairment of its value.

We find there is sufficient evidence to support the jury's verdict against LAS; accordingly, we find U.S. Roofing has established LAS's liability for breach of warranty.

## III

LSC's basic argument on appeal is that, as a third party not involved in the manufacture or selection of the crane, but simply financing the sales transaction, it had no liability for any breach of warranty with respect to the crane. It argues it effectively disclaimed all warranties, and therefore the equipment could not be nonconforming under the lease even if it was defective. This lack of nonconformity gave U.S. Roofing no basis on which to

revoke its acceptance as to LSC.[7] The lease remained in effect and U.S. Roofing was obligated to continue to make its payments. The failure to make the payments constituted a breach of the lease, bringing into play the acceleration clause. LSC contends it is entitled to recover on its cross-complaint for a deficiency judgment and LAS is liable for all of U.S. Roofing's damages. LSC frames its arguments on appeal by assigning error to several jury instructions.

■ One such alleged error occurred when the trial court permitted the jury to determine whether the disclaimer in the lease was unconscionable. The court instructed the jury: "It is the position of the plaintiff that the limitation of warranties contained in the lease, as well as the measure of damages contained in the lease, are unenforceable under the doctrine of unconscionability. Said clauses shall not be valid and shall be unenforceable, if plaintiff proves the provisions are unconscionable. The law does not precisely define what is or is not unconscionable. Unconscionability is recognized to include: An absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." The only other instruction proposed on this issue was one proposed by U.S. Roofing, which stated that the court had found the disclaimer unconscionable as a matter of law. The court refused to give this instruction.

■ U.S. Roofing contends that since LSC did not object to the instruction below, it cannot now raise the issue on appeal. LSC responds the record shows that the trial court deemed LSC to have objected to all of the instructions proposed by U.S. Roofing. We do not find the record so clear. At a hearing on the instructions LSC objected to two specific instructions. Twice during this hearing discussions were held off record. The second time this occurred the trial court stated, "Only reason I asked the reporter to turn herself off is the fact that it is deemed you objected to it." It is unclear whether, in stating an objection was deemed to have been made, the court was referring to the instruction specifically objected to or all instructions. In any event Code of Civil Procedure section 647 declares that "giving an

---

[7] We note that the jury verdict which apparently found a valid revocation of acceptance as to both LAS and LSC appears inconsistent. Although the court ruled the identity of the parties to the sale was a question for the jury, the general verdict did not require the jury to make this finding. If LAS sold the crane to U.S. Roofing—and as discussed in part IA, *ante*, there is evidence to support this finding—then LSC could not have leased the same crane to U.S. Roofing, but must have only financed the purchase. Revocation of acceptance is only available against a seller; therefore, if LAS sold the crane to U.S. Roofing, U.S. Roofing could revoke against LSC only if the jury found LSC to be the agent of LAS, a theory on which the jury was not instructed. Thankfully, we need not enter this quagmire of inconsistencies because the same result—that LSC is not liable for any breach of warranty—may be reached by finding, as a matter of law, a valid disclaimer of warranties.

instruction, refusing to give an instruction, or modifying an instruction given" is deemed excepted to. This statute has been interpreted to mean that when an instruction contains an incorrect statement of the law, in contrast to a claim that the instruction is too general or incomplete, the failure to object or propose a correct instruction will not bar a party from raising the error on appeal. (*Agarwal* v. *Johnson* (1979) 25 Cal.3d 932, 948-949 [160 Cal.Rptr. 141, 603 P.2d 58]; *Continental Airlines, Inc.* v. *McDonnell Douglas Corp.* (1989) 216 Cal.App.3d 388, 406-407 [264 Cal.Rptr. 779]; *Enis* v. *Specialty Auto Sales* (1978) 83 Cal.App.3d 928, 939-940 [148 Cal.Rptr. 255].) Since LSC contends it was error to give the instruction, the point may be raised on appeal without an objection at trial.

 LSC argues the disclaimer is valid because it comports with the requirements of section 2316.[8] Although California did not adopt section 2-302 of the Uniform Commercial Code,[9] which permits a court to refuse to enforce any provision of a contract that it finds unconscionable as a matter of law, the doctrine of unconscionability is recognized in California as a common law doctrine and has thus been applied by courts in the absence of

---

[8] Section 2316 reads: "(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable.

"(2) Subject to subdivision (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.'

"(3) Notwithstanding subdivision (2) [¶] (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and [¶] (b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and [¶] (c) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

"(4) Remedies for breach of warranty can be limited in accordance with the provisions of this division on liquidation or limitation of damages and on contractual modification of remedy (Sections 2718 and 2719)."

[9] Uniform Commercial Code section 2-302 reads: "(1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

"(2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."

specific statutory authority; further, language identical to Uniform Commercial Code section 2-302 was enacted as Civil Code section 1670.5. (*A & M Produce Co.* v. *FMC Corp.* (1982) 135 Cal.App.3d 473, 484-485 [186 Cal.Rptr. 114, 38 A.L.R.4th 1].) A warranty disclaimer is subject to this doctrine. (*Id.* at p. 495.)

The question of whether a contract or clause is unconscionable, however, is one of law. (Civ. Code, § 1670.5, subd. (a); *Central Bank* v. *Kaiperm Santa Clara Fed. Credit Union* (1987) 191 Cal.App.3d 186, 205 [236 Cal.Rptr. 262]; *A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 489.)

■ Unconscionability involves both procedural and substantive aspects. (*A & M Produce Co.* v. *FMC Corp., supra,* at p. 486.) The procedural element focuses on the "oppression" arising from an inequality of bargaining power between the parties and the "surprise" of a clause hidden in a printed document. (*Ibid.*) The substantive element is concerned with whether the terms are overly harsh or one-sided. (*Id.* at p. 487.)

■ ■ ■ ■ Recognizing that California courts have not ruled on whether a disclaimer of warranties in a financing lease is unconscionable, LSC relies on cases from other jurisdictions.[10] It places primary reliance on *Konicki* v. *Salvaco, Inc.* (1984) 16 Ohio App.3d 40 [474 N.E.2d 347], which also involved the sale of equipment financed by a lease. When the equipment would not function properly and repairs failed to correct the problem, Konicki, the lessee, stopped making payments on the lease and sued both the manufacturer and the leasing company. The leasing company counterclaimed for the balance due under the lease. (474 N.E.2d at p. 349.) The manufacturer and Konicki settled before trial. The trial court found

---

[10] In *Federal Leasing Consultants, Inc.* v. *Mitchell Lipsett Co.* (1978) 85 Cal.App.3d Supp. 44, at page Supp. 49 [150 Cal.Rptr. 82], the court stated it might agree the financing lessor was not liable to the lessee on a warranty theory because the lease contained a disclaimer of warranties. The issue of liability for breach of warranty, however, was not before the court. The issue instead was whether the doctrine of commercial frustration relieved the lessee from the obligation to make payments under the lease. The lessee leased an electronic alarm system that operated on a radio frequency. The system was rendered inoperative by a federal court injunction against using the frequency because it interfered with secret government frequencies. The court found the doctrine of commercial frustration applied, refusing to view the purpose of the lease so narrowly as simply providing financing. The court found the fundamental purpose of the transaction was to give the lessee an operating burglar alarm system. (*Ibid.*)

The doctrine of commercial frustration does not apply here. The doctrine only operates when a supervening event, not reasonably foreseeable, destroys the value of counter-performance in a contract or lease. (*Lloyd* v. *Murphy* (1944) 25 Cal.2d 48, 54 [153 P.2d 47].) Here the defect in the crane was foreseeable, as demonstrated by the disclaimer provision which addressed such an occurrence by disclaiming all warranties.

Konicki had validly revoked acceptance as to the leasing company and ruled against the leasing company on the counterclaim. (*Ibid.*) The appellate court reversed because the lessee had failed to give the lessor proper notice of the revocation of acceptance and, therefore, the revocation was not valid. (*Id.* at pp. 351-352.) The court then stated that revocation of acceptance was inapplicable because the leasing company disclaimed all warranties and therefore did not warrant that the goods would conform to anything. (*Id.* at p. 352.) The court stated, "we find nothing unconscionable in recognizing the right of a financing lessor/seller to disclaim warranties to a product in which it had no active dealings in the manufacture, promotion or sale thereof." (*Ibid.*)

Another Ohio case also found nothing per se unconscionable in the right of a financing lessor-vendor to disclaim all warranties to equipment in which it had no active dealings in the manufacture or selection, so long as all warranties of the manufacturer were assigned to the lessee. (*Irving Leasing Corp.* v. *M & H Tire Co.* (1984) 16 Ohio App.3d 191 [475 N.E.2d 127, 131].) If, however, the lessee was left without recourse if the equipment did not work, the disclaimer might be unconscionable. Since the lease did not assign the warranties, the court remanded the case for a determination of whether the disclaimer was unconscionable. (*Ibid.*)

In *Beneficial Commercial Corp.* v. *Cottrell* (1984) 212 Mont. 493 [688 P.2d 1254, 1256], the court held a disclaimer of warranties in an equipment lease deprived the lessees of the defense of breach of warranties when they stopped payment on defective equipment. The court found the disclaimer was not unconscionable because it was conspicuous and caused no surprise. (688 P.2d at p. 1257.)

The Montana Supreme Court also found a warranty of disclaimers in a financing lease not unconscionable in *All-States Leasing* v. *Top Hat Lounge* (1982) 198 Mont. 1 [649 P.2d 1250] and affirmed a summary judgment against the lessee on an action to recover delinquent lease payments. The lessee had selected both the equipment and the supplier of the equipment before contacting the leasing company about a lease arrangement. In rejecting a contention that the disclaimer of all express or implied warranties was unconscionable the court said: "When, as here, all provisions were agreed to by businessmen, none of the surrounding circumstances suggest oppression of appellants' freedom to select another lessor, and nothing on the record suggests disparity of bargaining power, the lease cannot be considered unconscionable." (649 P.2d at p. 1253.)

Two cases out of New York have found problems of unconscionability in warranty disclaimers contained in equipment leases. In *Pactel Finance* v.

*D.C. Marine Service Corp.* (1987) 136 Misc.2d 194 [518 N.Y.S.2d 317], a lessor sued to recover payments under a lease agreement for a cellular telephone. The defense was breach of warranties and the lessee tendered return of the equipment. The court found the lease, which contained a purchase option, was not a true lease, but a sale. (518 N.Y.S.2d at p. 319.) It further found a potential unconscionability in the financing arrangement because the lease appeared to finance certain services—monthly access by Pactel, insurance and the first 30 minutes of calls each month—in addition to the equipment. The court was concerned that the lease might obligate the lessee to make payments even when it did not receive the bargained-for services. (*Ibid.*) Because of the question of unconscionability, the court denied the lessor's motion for summary judgment.

In the second case, *Industralease Automated & Scientific Equipment Corporation* v. *R.M.E. Enterprises, Inc.* (1977) 56 App.Div.2d 482 [396 N.Y.S.2d 427], the court found the disclaimer of warranties unconscionable. This conclusion was based on the specific factual setting of the case. The parties were in unequal positions, the lessor had been hastily changed at the last minute from the manufacturer, who provided a warranty, to a third party, who did not, and the equipment never worked, making the agreement one-sided. (396 N.Y.S.2d at pp. 430-432.)

 Following a review of these cases we find nothing per se unconscionable in a financing lessor disclaiming all warranties in equipment selected solely by the lessee-buyer. We share the concern of the court in *Irving Leasing* that the lessee-buyer must have adequate recourse if the equipment proves defective. As these cases show, "[a] determination of unconscionability, though a question of law, involves various factual considerations, including the business conditions under which the contract was formed, the relative bargaining power of the parties, their reasonable expectations, and the commercial reasonableness of the risk allocation as provided in the agreement." (*Central Bank* v. *Kaiperm Santa Clara Fed. Credit Union, supra*, 191 Cal.App.3d at p. 205, citing *A & M Produce Co.* v. *FMC Corp., supra*, 135 Cal.App.3d 473.)

 Because the issue of the unconscionability of the disclaimer was tried to a jury, all evidence necessary to determine the factual considerations is in the record and we are able to conclude the disclaimer of warranties in this case is not unconscionable. First, the disclaimer meets the conspicuousness requirement of section 2316, having been printed in red above the signature line and using the term "as-is." Further, nothing suggests U.S. Roofing was in an unequal bargaining position with LSC. The principal of U.S. Roofing had 30 years experience in the roofing business, and the

company had received a large government contract. Once U.S. Roofing decided to purchase the crane it discussed financing with at least one other financing lessor. This was not a take-it-or-leave-it situation. The procedural element thus indicates no unconscionability. (*A & M Produce Co.* v. *FMC Corp., supra,* 135 Cal.App.3d at p. 486.) Nor does the substantive element pose a problem; there is no unreasonable allocation of risk, for the arrangement is not contrary to the reasonable expectations of the parties. Not only did U.S. Roofing select the crane and negotiate with LAS for its purchase, it also continued to contact LAS when problems arose. As discussed above, this evidence of privity between U.S. Roofing and LAS gives U.S. Roofing an adequate remedy for the defective crane.

Having found nothing unconscionable in the disclaimer of warranties, we must determine what effect such finding has on U.S. Roofing's claim against LSC based on revocation of acceptance. Section 2608 permits a seller to revoke his acceptance of a lot or commercial unit within a reasonable time when it is nonconforming and such nonconformity substantially impairs its value to the buyer. LSC argues that when a financing lessor validly disclaims all warranties, the equipment is conforming if it matches the description in the lease, even if it turns out to be defective. If the equipment conforms, there can be no valid revocation of acceptance as to the financing lessor.

In making this argument, LSC relies on case law from other states. It points to the dicta in *Konicki* v. *Salvaco, Inc., supra,* 474 N.E.2d 347, at page 352, noted above, that revocation of acceptance is inapplicable to a financing lease where the lessor has disclaimed all warranties.

Two Oregon appellate court cases also support LSC's position. In *Clark* v. *Ford Motor Co.* (1980) 46 Ore.App. 521 [612 P.2d 316], the court held the purchaser of a defective Ford Bronco could not recover from either the manufacturer or the dealer on a revocation of acceptance theory. (612 P.2d at p. 319.) The manufacturer was not a seller because it had not contracted with or sold to the buyer. The dealer had disclaimed all warranties; since the Bronco was delivered in accordance with the contract it could not be said to be a nonconforming good. (*Ibid.*) The court found there was protection for the buyer under the Consumer Warranty Act. In *Crume* v. *Ford Motor Co.* (1982) 60 Ore.App. 224 [653 P.2d 564], the buyers of a flatbed truck sought to revoke acceptance. The court affirmed dismissal of the action. Since the truck conformed to the contract, it was not a nonconforming good. Although the limited warranty of the manufacturer failed of its essential purpose, that did not make the goods nonconforming under the

contract with the dealer absent a warranty of merchantability from the dealer. (653 P.2d at p. 567.)

In *McCormick Machinery, Inc.* v. *Johnson & Sons* (Fla.Dist.Ct.App. 1988) 523 So.2d 651, 656, the court noted that if all warranties were disclaimed, the goods could not be nonconforming, citing *Konicki, Crume,* and *Clark.* The revocation of acceptance was valid, however, because the disclaimer was ineffective for failure to mention merchantability. (*Id.* at p. 653.)

Other cases have permitted the remedy of revocation of acceptance when there is a disclaimer of warranties.[11] In *Seekings* v. *Jimmy GMC of Tucson, Inc.* (1982) 130 Ariz. 596 [638 P.2d 210], the court permitted the buyer of a motor home to revoke acceptance against the dealer/seller who had validly disclaimed all warranties. The court permitted revocation when the goods failed to conform to the seller's representation of the goods and the nonconformity substantially impaired the value of the goods. (638 P.2d at p. 216.) The court found the dealer impliedly represented that the buyers would receive a motor home warranted by certain manufacturers for which it was an authorized repair agent. (*Id.* at pp. 216-217.) The motor home was not sold "as-is." (*Id.* at p. 217.) In *Beneficial Commercial Corp.* v. *Cottrell, supra,* 688 P.2d 1254, the issue was rejection of goods, not revocation of acceptance. The court reversed a summary judgment against the lessees and remanded for trial on the question of whether the lessee properly rejected the goods. The court held the disclaimer of warranties deprived the lessees of the defense of breach of warranties, but not other remedies available under the Uniform Commercial Code. (*Id.* at pp. 1256-1257.) Presumably, these other remedies could include revocation of acceptance. The court did not address the question of whether the goods conformed to the contract with the disclaimer.

 We believe that where a financing lessor has validly disclaimed all warranties, and the goods conform to the provisions of the lease, the lessee

---

[11] In *Pacific American Leasing Corp.* v. *S.P.E. Bldg. Sys.* (1986) 152 Ariz. 96 [730 P.2d 273], the court did not address whether revocation of acceptance was the proper remedy because it found the attempted revocation was untimely. Building Systems leased certain computer equipment from Pacific American Leasing. After a year Building Systems attempted to revoke its acceptance. Pacific American Leasing sued for breach of the lease and the trial court granted Building Systems' motion for summary judgment. The reviewing court reversed and ordered judgment entered in favor of Pacific American Leasing. (730 P.2d at p. 280.) The court held article 2 of the Uniform Commercial Code was applicable to the lease; it found the lease had elements of a sale as well as of a security transaction and article 2 did not apply only to transactions intended solely as security transactions. (*Id.* at p. 277.) The court then assumed arguendo that revocation of acceptance was available to Building Systems, but found the attempted revocation was not timely.

cannot revoke acceptance as to the lessor, but must look to the supplier or the manufacturer for its remedy. Accordingly, the judgment against LSC must be reversed.[12]

## IV

LSC next contends it is entitled to a deficiency judgment. Upon U.S. Roofing's continued default in making payments, LSC accelerated the amount due under the lease and made a written demand. When U.S. Roofing did not pay, LSC elected to exercise its rights under paragraph 17 of the lease and sections 9503 and 9504 to repossess the equipment from U.S. Roofing, and sell it. The sale of the equipment must be in accordance with section 9504, which requires the sale to be conducted in a commercially reasonable manner with appropriate notices given. Generally, whether a sale is conducted in a commercially reasonable manner is a question of fact. (*Crocker Nat. Bank* v. *Emerald* (1990) 221 Cal.App.3d 852, 862 [270 Cal.Rptr. 699].) In this case the evidence on this issue was uncontroverted. LSC put forth evidence it complied with the notice requirements of section 9504. Neither U.S. Roofing nor LAS contests the commercial reasonableness of the sale or the amount of the deficiency. Accordingly, LSC requests this court to direct entry of judgment in its favor for the amount LSC claims as the deficiency.

Although we agree LSC has shown its entitlement to a deficiency judgment, we share the trial court's concern with LSC's assessment of the late charge after repossession and sale of the equipment. LSC claimed it was entitled to the late charge until it received payment in full of the deficiency. We disagree.

The late charge applies only to delinquent payments under the lease. When LSC exercised its right to accelerate, repossess, sell and recover the deficiency, it altered the rights and duties of both itself and U.S. Roofing. At that point U.S. Roofing no longer had any right in the equipment and consequently no duty to continue to make payments. Although it could redeem the equipment by fulfilling its obligations to LSC under the lease (§ 9506), U.S. Roofing had no duty to do so. Instead, U.S. Roofing was then only responsible for any deficiency after the sale. Without an obligation to make payments, there could be no delinquent payments giving rise to a late charge. Therefore, U.S. Roofing was not responsible for any late charge after LSC elected to exercise its rights to repossess and sell the equipment.

We direct judgment be granted in favor of LSC in the amount of $125,354.60, the amount of the deficiency after the sale.

---

[12]Since we reverse the judgment on this basis, it is unnecessary to reach LSC's other contentions regarding instructional error.

## V

■ LSC contends that both the deficiency judgment and the $10,734.19 judgment against LSC which we have reversed should be recovered from LAS as part of the damages suffered due to the breach of warranty. Section 2711 provides a buyer who justifiably revokes acceptance may recover so much of the purchase price as has been paid. If the $10,734.19 judgment represents amounts U.S. Roofing paid for the crane, it is properly recoverable from LAS as damages under section 2711. Section 2715 permits the buyer to recover incidental and consequential damages resulting from the seller's breach. Amounts paid or owed to the buyer's financier have been held to be a proper element of the buyer's consequential damages where the seller knew of the loan. (*Evans* v. *Graham Ford, Inc.* (1981) 2 Ohio App.3d 435 [442 N.E.2d 777, 782] [seller ordered to hold buyer harmless from obligations to financier]; *Distco Laminating, Inc.* v. *Union Tool Corp.* (1978) 81 Mich.App. 612 [265 N.W.2d 768, 773] [interest charges on loan recoverable as damages if seller knew of loan]; *Carl Beasley Ford, Inc.* v. *Burroughs Corporation* (E.D.Pa 1973) 361 F.Supp. 325, 334 [same]; *Zoss* v. *Royal Chevrolet, Inc.* (Ind. Super. Ct. 1972) 11 U.C.C. Rep. Serv. 527 [interest on loan recoverable as damages].) Under this authority U.S. Roofing could also recover the amount of the deficiency judgment from LAS.

At trial U.S. Roofing requested the jury to add any amount it found on the deficiency judgment to U.S. Roofing's recovery from LAS. On appeal, although LSC raised the point in its opening brief, both LAS and U.S. Roofing are silent as to which party is responsible for these damages if we grant LSC the relief it seeks. Although it appears the jury found LSC liable for payments U.S. Roofing made under the lease and LAS liable for all incidental and consequential damages, the verdict is general and does not indicate how the jury determined the amount or the allocation of damages. Therefore, although we find the verdict against LAS proper on the issue of LAS's liability for breach of warranty, we remand the case for a new trial limited to the issue of damages. (*Pretzer* v. *California Transit Co.* (1931) 211 Cal. 202, 209 [294 P. 382].)

### DISPOSITION

The judgments against LSC on both the complaint and the cross-complaint are reversed. We direct entry of judgment in favor of LSC on its cross-complaint in the amount of $125,354.60. The judgment against LAS

is reversed and the matter is remanded to the trial court for a new trial limited to damages. LSC shall recover its costs on appeal.

Sims, Acting P. J., and Nicholson, J., concurred.

A petition for a rehearing was denied April 23, 1991, and the petition of defendants and appellants for review by the Supreme Court was denied June 20, 1991.