14

In the Matter of ROBERT T. DOHERTY, Petitioner, v MARIO M. CUOMO, as Secretary of State of the State of New York, Respondent.

Fourth Department, July 10, 1980

### APPEARANCES OF COUNSEL

*John Manning Regan* for petitioner.

*Robert Abrams, Attorney-General (Vincent M. Barone* and *William J. Kogan* of counsel), for respondent.

### OPINION OF THE COURT

Schnepp, J.

Petitioner, Robert T. Doherty, a licensed real estate broker, seeks to annul a determination of the respondent, Secretary of State, revoking his broker's license. In this article 78 proceeding he claims, in essence, that respondent is attempting to punish him twice for the same prohibited act. Because a substantial evidence question was raised, Special Term transferred the proceeding to this court (CPLR 7804, subd [g]).

This case has a complex procedural history. In a complaint dated October 26, 1976, respondent charged petitioner with violations of sections 440-a[1] and 441 (subd 1-A, par [e])[2] of the Real Property Law and section 175.2 of title 19 of the New York Official Compilation of Codes, Rules and Regulations[3] for employing Richard Barnes and Anthony Wigington, knowing that they were neither duly licensed real estate salesmen nor holders of temporary rent collector's permits, to collect rents during the months of December, 1975, and February, March and April, 1976 from tenants in buildings owned by John Campbell and Mary King, who had individually contracted with petitioner to manage their properties. A formal hearing was held on these charges on November 18, 1976. By decision dated January 19, 1977 the hearing officer, Bernard Silberman, concluded that petitioner had knowingly so employed

---

1. Section 440-a, *inter alia,* prohibits a person from engaging in the business or occupation of a real estate broker or real estate salesman without a license.

2. Section 441 (subd 1-A, par [e]) provides, *inter alia,* that the Department of State "may issue to an applicant for a salesman's license, upon the written request of his employer who shall thereby express willingness to stand responsible for the acts of such salesman, a temporary rent collector's permit * * * provided that the activities of said applicant * * * shall consist of and be confined exclusively and solely to the collection of rents for the use of real estate".

3. Section 175.2 provides: "A real estate broker shall, within a reasonable time, render an account to his client and remit to him, any monies collected for his client, and unexpended for his account."

unlicensed persons,[4] thereby demonstrating his "untrustworthiness", and revoked petitioner's license pursuant to section 441-c of the Real Property Law.[5] Respondent concurred with this determination. The petitioner then instituted an article 78 proceeding; the Secretary of State's revocation order was stayed and the matter transferred to this court in early May, 1977.

While this proceeding was pending, respondent served petitioner with a further complaint dated May 26, 1977 charging him with violations of sections 440-a and 442[6] of the Real Property Law and section 175.2 of title 19 of the New York Official Compilation of Codes, Rules and Regulations for employing Barnes and Wigington with knowledge that they were neither duly licensed real estate salesmen nor holders of temporary rent collector's permits to collect rents during the months of January, February, March and April, 1976 from tenants on property owned by Dr. Richard Schlessinger, who had contracted with petitioner to manage his real property. A hearing on this complaint was conducted on June 8, 1977 before hearing officer Silberman, the same officer who presided over the first hearing. Petitioner objected to Silberman's appointment as hearing officer on the grounds of bias. This objection and others in point of law were denied. By order to show cause dated July 14, 1977, which stayed further proceedings, petitioner instituted the instant article 78 proceeding in the nature of prohibition. On July 21, 1977 the hearing officer determined that petitioner permitted Barnes and Wigington to collect rents for Schlessinger, despite the fact that neither was licensed as a real estate salesman, and thereby demonstrated his "untrustworthiness" as a real estate broker and again ordered the revocation of his license pursuant to section 441-c of the Real Property Law. Respondent concurred with this determination. By order dated November 17, 1977 Special

---

4. Although this specific allegation was not made in the complaint, the hearing officer also found that based on proof adduced at the hearing the petitioner had knowingly employed a third person, Robert Sheperd, as a real estate salesman prior to his licensure.

5. Section 441-c provides, *inter alia,* that "the department of state may revoke the license of a real estate broker * * * or suspend the same * * * if such licensee * * * has demonstrated untrustworthiness".

6. Section 442 provides, *inter alia,* that "[n]o real estate broker shall pay any part of a fee, commission or other compensation received by the broker to any person for any service * * * unless such a person be a duly licensed real estate salesman regularly employed by such broker".

Term dismissed the article 78 petition on respondent's motion without prejudice to an application by petitioner for leave to file a supplementary petition. Thereafter, by order dated December 1, 1977, the court granted the petitioner's application to amend and supplement the original petition to permit a review of the July 21, 1977 order of revocation and stayed its effect. In the supplemental petition dated November 14, 1977 petitioner contended that the proceedings conducted on June 8, 1977 violated lawful procedure and that the respondent's determination was arbitrary and capricious and unsupported by substantial evidence in the record.

On July 13, 1978 this court confirmed the respondent's determination of January 19, 1977 relating to the October 26, 1976 complaint, finding that there was ample evidence in the record to support the hearing examiner's finding that the petitioner knowingly violated section 440-a and 441 (subd 1-A, par [e]), but that the penalty of revocation should be reduced to a suspension of petitioner's license for a period of six months and a fine of $200 (*Matter of Doherty v Cuomo,* 64 AD2d 874, 848, app dsmd 45 NY2d 960). Matters lay dormant pending petitioner's application for a review in the Court of Appeals until February 13, 1979 when petitioner filed a second supplemental petition alleging that this court determined the appropriate penalty for his violations and that under the principle of *res judicata* the second order of revocation should be canceled or annulled.

The central question raised on this appeal is whether the respondent Secretary of State, after he once claimed and determined that the petitioner demonstrated his "untrustworthiness" based on violations of the Real Property Law for hiring unlicensed persons to collect rents and punished him for that offense, is precluded under the principle of *res judicata* from later making the same claim for the same specific act based on different evidence.

The doctrine of *res judicata* is stated in section 1 of the Restatement of Judgments (1942): "Where a reasonable opportunity has been afforded to the parties to litigate a claim before a court which has jurisdiction over the parties and the cause of action, and the court has finally decided the controversy, the interests of the State and of the parties require that the validity of the claim in any issue actually litigated in the action shall not be litigated again by them." (See, also, *Gramatan Home Investors Corp. v Lopez,* 46 NY2d 481.) "A final

judgment on the merits * * * is conclusive as to the rights of the parties * * * and has the effect of merger or bar only as to any subsequent action involving the same cause of action" (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.14). The underlying policy of the doctrine of *res judicata* is twofold: (1) "public policy and necessity, which make it to the interest of the state that there should be an end to litigation", and (2) "the hardship on the individual that he should be vexed twice for the same cause" (50 CJS, Judgments, § 592, p 11). Chief Judge CARDOZO in *Schuylkill Fuel Corp. v Nieberg Realty Corp.* (250 NY 304, 306-307) summed up the principle in this way: "A judgment in one action is conclusive in a later one not only as to any matters actually litigated therein, but also as to any that might have been so litigated, when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests established by the first" (see, also, *Matter of Reilly v Reid,* 45 NY2d 24; *Drago v Buller,* 60 AD2d 518).

The doctrine of *res judicata* is applicable to certain administrative proceedings (see, e.g., *Matter of Venes v Community School Bd. of Dist. 26,* 43 NY2d 520; see, generally, Siegel, New York Practice, § 456). As the United States Supreme Court stated in *United States v Utah Constr. Co.* (384 US 394, 422), "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose."[7]

It is evident that the doctrine of *res judicata* could be applied to the administrative action taken by the respondent. In both proceedings, the respondent acted in a quasi-judicial capacity. Indeed, prior to respondent's order of revocation in each case there were adversary proceedings before a hearing officer who reviewed the evidence and made findings of fact. In short, these proceedings constitute adjudications (see *Matter of Venes v Community School Bd. of Dist. 26, supra,* p 525). As

---

**7.** Although the doctrine of *res judicata* is applicable to administrative proceedings, courts have been quick to create qualifications and exceptions to it in the interest of fairness, justice, and practicability on the grounds that public policy requires it (5 Mezines-Stein-Gruff, Administrative Law, § 40.01, and cases cited therein). As Professor Davis states, "The sound view is * * * to use the doctrine of res judicata when the reasons for it are present in full force, to modify it when modification is needed, and to reject it when the reasons against it outweigh those in its favor" (Davis, Administrative Law Text [1972 ed], § 18.02, p 360).

Professor Davis points out (Administrative Law Text [1972 ed], § 18.08, at p 368): "In name and tradition 'res judicata' means things adjudicated. Only what is adjudicated can be res judicata. Administrative action other than adjudication cannot be res judicata."

In the instant case petitioner argues, in substance, that because the issue of his "untrustworthiness" for employing Barnes and Wigington, nonlicensed persons, to collect rents during December, 1975 and the early months of 1976 has already been litigated in a previous proceeding and this court has reviewed the penalty imposed *(Matter of Doherty v Cuomo,* 64 AD2d 847, *supra),* the Secretary of State should be estopped from relitigating the issue. The "theoretical subdivision" of the *res judicata* doctrine which petitioner would have us employ here is the doctrine of merger (see, generally, Siegel, New York Practice, § 450). Under the doctrine of merger, "[a] claim or demand which is put in suit and passes to final judgment is merged or swallowed up in the judgment * * * The judgment extinguishes the original cause of action, which loses its vitality and cannot thereafter be litigated". (50 CJS, Judgments, § 599, pp 20-21; see, also, Restatement, Judgments 2d, § 47 [Tent Draft No. 1, 1973.)[8]

Petitioner maintains that respondent's present claim that he employed the unlicensed rent collectors merged into the prior adjudication that petitioner demonstrated "untrustworthiness" based on the same act. To analyze the cogency of petitioner's argument, we must determine whether respondent's claim in the first proceeding is the same as that raised in the second.

" 'Claim', in the context of res judicata, has never been broader than the transaction to which it related. * * * The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories, or variant forms of relief flowing from

---

8. Operation of the doctrine of merger prevents what is commonly referred to as "splitting a cause of action". "[W]hen a plaintiff brings an action for only part of his cause of action, the judgment obtained in that action precludes him from bringing a second action for the residue of the claim" (5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.15; see, also, 9 Carmody-Wait 2d, NY Prac, § 63:202). Thus, a plaintiff cannot "split up" one single or entire cause of action into parts and bring separate causes of action for each (see *Perry v Dickerson,* 85 NY 345). If the same essential facts or issues are present in both actions, *res judicata,* in one of its various incarnations (e.g., merger, bar, or collateral estoppel), is available as a defense (see, generally, 5 Weinstein-Korn-Miller, NY Civ Prac, par 5011.14).

those theories, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and regardless of the variations in the evidence needed to support the theories or rights. The transaction is the basis of the litigative unit or entity which may not be split. * * * The law of res judicata now reflects the expectation that parties who are given the capacity to present their 'entire controversies' shall in fact do so" (Restatement, Judgments 2d, § 61, Comment *a,* at pp 78-81 [Tent Draft No. 1, 1973]).

As can readily be seen, the two proceedings brought by respondent against the petitioner are nearly identical. The parties (petitioner and respondent), the time frame (December, 1975 through April, 1976), two of the employees (Barnes and Wigington),[9] most of the alleged statutory violations (Real Property Law, §§ 440-a and 441-c; 19 NYCRR 175.2), the remedy sought for these violations (the disciplining of petitioner) and the penalty imposed (license revocation) are the same. The legal theory is the same in both proceedings. Even the hearing officer who presided over both proceedings is the same. Most importantly, the act of misconduct, i.e., the claim or "transaction", which predicates the charges against petitioner in both proceedings is the same—the hiring of the unlicensed Barnes and Wigington to collect rents. Although the clients for whom these men collected rents were different in the various proceedings, the prohibited act of hiring these employees is the single act or "transaction" which precipitated all of the unlawful collections.

Under the doctrine of *res judicata,* a determination in the first action is conclusive in the second "not only as to matters actually litigated therein, but also as to any that might have been so litigated" *(Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304, 306, *supra).* It is clear that respondent's determination in the first proceeding could have been based on proof related to one or all of petitioner's clients. We note that respondent was aware in September, 1976, prior to the institution of the first proceeding, that Dr. Schlessinger had hired petitioner to collect rents from tenants on his property and that Barnes had made the actual collection. However, respondent opted to rely only on a portion of the evidence in

---

9. Respondent makes no argument that the second proceeding differs from the first proceeding because of the finding in the first proceeding that the unlicensed Sheperd was employed by petitioner (see n 4, *supra.)*

his possession in the first proceeding. If respondent had presented all of the evidence of which he had knowledge in the first proceeding, a more severe penalty could not have been imposed than the one he ordered—revocation. Respondent obtained all the relief in that proceeding, based on that transaction, to which he was entitled. The second proceeding, oddly enough, seeks the same relief as the first (revocation of petitioner's license), but based on different evidence. All or part of the evidence concerning rent collections would have supported the hearing officer's findings in either proceeding; the same evidence would have been sufficient to support either adjudication. However, the fact that the second action contains new evidence involving a different client of the petitioner does not sufficiently distinguish the claim of the respondent in this case from its claim in the prior proceeding so as to preclude application of the doctrine of *res judicata.*

In *Continental Can Co., U. S. A. v Marshall* (603 F2d 590), the United States Court of Appeals for the Seventh Circuit wrestled with this same issue in a case involving analogous facts. There, the Secretary of Labor issued citations alleging that certain manufacturing plants owned and operated by the Continental Can Company ("Continental") violated the noise standard set by Federal regulation. After a hearing on these charges and the submission of findings by an Administrative Law Judge, the Occupational Safety and Health Review Commission ("OSHA") found in favor of Continental. During these proceedings, however, the Secretary of Labor issued citations for similar noise violations at several other Continental plants. Continental then filed suit in Federal District Court seeking to enjoin the Secretary of Labor from further prosecution of these noise cases, alleging that it had successfully litigated the issue before OSHA and that OSHA should have collaterally estopped the Secretary from relitigating the issue with regard to its other plants. The Seventh Circuit affirmed the decision of the District Court which found that the Secretary of Labor was collaterally estopped from bringing additional actions against the company's other plants. The court found that to require Continental to relitigate the issue "over and over in an untold number of hearings involving single plant * * * citations is harassment of a capricious kind" *(Continental Can Co., U. S. A. v Marshall, supra,* p 596).

As the Secretary of Labor in *Continental Can Co.* was not permitted to bring separate actions against Continental for

each of its plants based on the same claim, neither should the respondent Secretary of State be permitted to bring separate proceedings against petitioner with respect to each of his clients. To permit respondent to relitigate the issue "over and over in an untold number of hearings involving single [clients of the petitioner] is harassment of a capricious kind" *(Continental Can Co., U. S. A. v Marshall, supra,* p 596). Respondent's claim that petitioner's misconduct constituted a showing of "untrustworthiness" merged into the final "judgment" obtained in the first proceeding.

It is no moment that in the second proceeding respondent charged petitioner with a violation of a different statutory provision, section 442 of the Real Property Law which prohibits fee splitting. Evidence was not submitted nor was a finding made relating to this charge. The mere pleading of an additional statutory violation, absent any proof in support of the new charge, will not foreclose application of the doctrine of *res judicata* where the issue presented in the case is identical to a previously litigated action (see, generally, Davis, Administrative Law Text [1972 ed], § 18.04). Any other result would permit a litigant to avoid the conclusive effect of *res judicata,* by design or inadvertence, by alleging a new statutory claim and then omitting to submit proof on that issue.

We further note that in view of the "measure of identity" between the two proceedings, a different judgment in the instant case "would destroy or impair rights or interests established by the first" *(Schuylkill Fuel Corp. v Nieberg Realty Corp.,* 250 NY 304, 306-307, *supra).* The "right" or "interest" established by the first proceeding is petitioner's interest in maintaining his real estate broker's license. Even though in the first administrative proceeding the Secretary of State determined that petitioner's license should be revoked, this court held that the penalty to petitioner should not be so severe, and reduced it to a six-month suspension and a $200 fine *(Matter of Doherty v Cuomo,* 64 AD2d 847, *supra).* In brief, at the end of the first administrative proceeding, petitioner, after paying his penalty, still retained his license. A different result in this case (i.e., our affirmance of the revocation of petitioner's license) would have destroyed the interests established by the first proceeding. Moreover, successive administrative actions would subvert the efficient administration of justice and undermine our careful assessment of a proper penalty against petitioner. "Afterthoughts or after discoveries

however understandable and morally forgivable are generally not enough to create a right to litigate anew" *(Matter of Reilly v Reid,* 45 NY2d 24, 28, *supra).*

Accordingly, the Secretary of State should be barred from bringing this second proceeding against petitioner, and the charges contained in that complaint should be dismissed and respondent's determination annulled. In view of this ruling, it is unnecessary to reach other issues raised on this appeal.

SIMONS, J. P., HANCOCK, JR., CALLAHAN and MOULE, JJ., concur.

Petition unanimously granted, with costs, determination annulled and charges dismissed.