**ORIX CREDIT ALLIANCE, INC., Plaintiff,**

v.

**Steven C. HORTEN, Jennie Horten, Robert Lazovich, Louise Lazovich, Harry W. Jessup, and Helen Jessup, Defendants.**

**No. 96 Civil 1895 (LBS).**

United States District Court, S.D. New York.

May 19, 1997.

Lewis M. Smoley, New York City, for Plaintiff.

Murphy, Pearson, Bradley & Feeney, Sacramento, CA, for Defendants; Mark E. Ellis, Gregory W. McCracken, of counsel.

## OPINION

SAND, District Judge.

Plaintiff Orix Credit Alliance, Inc. ("Orix") sues to enforce a guaranty arising from an equipment lease. Plaintiff now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, we deny Plaintiff's motion for summary judgment, and instead grant summary judgment in favor of Defendants.

## I.

### BACKGROUND

The following statement of facts is taken from Orix's complaint and from the decision of the California Court of Appeal in *U.S Roofing, Inc. v. Credit Alliance Corp.*, 228 Cal.App.3d 1431, 279 Cal.Rptr. 533 (1991), a prior lawsuit involving the leasing arrangement at issue in this litigation.

In 1983, U.S. Roofing, Inc. ("U.S.Roofing") was awarded a contract to perform roofing work at the Alameda Naval Air Station in Oakland, California. *U.S. Roofing*, 279 Cal. Rptr. at 536. U.S. Roofing determined that a crane would be needed to perform the work, and thus contacted Liquid Asphalt Systems ("LAS"), an equipment supplier, to discuss the acquisition of a crane. *Id.* Eventually, a leasing arrangement was established in which LAS sold a crane to an entity called Leasing Service Corporation ("LSC"), which in turn leased the crane to U.S Roofing. *Id.* On July 19, 1983, Defendants Steven C. Horten, Jennie Horten, Robert Lazovich, Louise Lazovich, Harry W. Jessup, and Helen Jessup ("Defendants" or "Guarantors") executed a personal guaranty (the "Guaranty") of all obligations of U.S. Roofing to LSC. *See* Compl. ¶ 11 & Ex. B. This Guaranty forms the basis for the current suit.[1]

U.S. Roofing began to experience problems with the crane's performance soon after its delivery in August 1983. *U.S. Roofing*, 279 Cal.Rptr. at 537. After attempts were made to repair the crane, U.S. Roofing stopped making lease payments in November 1983 and sent letters to LSC and LAS seeking to revoke the lease. *Id.* LSC responded by treating the nonpayment as a breach of the lease, invoking the lease's acceleration clause, and repossessing the crane. *Id.* LSC then held a public sale, at which LSC purchased the crane. *Id.*

In March 1984, U.S Roofing brought suit in California state court against LSC, LAS, and the crane's manufacturer, alleging breach of warranty. *Id.* LSC filed a cross-complaint against U.S. Roofing for breach of the lease, *id.*, but the Guarantors were not made parties to the suit. Following trial, the California Court of Appeal upheld a jury verdict in favor of U.S. Roofing against LAS on the issue of liability for breach of warranty, and remanded for a new trial as to damages. *Id.* at 536. However, the court reversed a verdict in favor of U.S. Roofing against LSC, and instead granted judgment to LSC against U.S. Roofing in the amount of $125,354.60, representing the balance due under the lease. *Id.* The judgment in favor of LSC against U.S. Roofing was executed in July 1991, and subsequently increased to $190,154.48 with the addition of fees and costs. *See* Compl. ¶ 9 & Ex. A.

The 1991 judgment against U.S. Roofing was never paid. *Id.* ¶ 12. Orix, as successor in interest to LSC, filed this lawsuit in 1996 against the Guarantors in an attempt to collect the $190,154.48 amount of the judgment. *Id.* ¶ 13. On the instant motion, Orix contends that there are no material issues of fact concerning its right to collect on the Guaranty and therefore judgment should enter in its favor as a matter of law. No cross-motion has been filed by the Guarantors; however, the Guarantors have asserted several defenses in opposition to Orix's motion, including statute of limitations, collateral estoppel, and unconscionability.

## II.

### DISCUSSION

#### A. *Summary Judgment Standard*

Summary judgment may be granted only where the moving papers and affidavits sub-

---

1. The Guaranty provides in pertinent part as follows:

    [W]e, the undersigned ... agree to be, without deduction by reason of set-off, defense or counterclaim of Subject [U.S. Roofing], jointly, severally, directly and unconditionally liable to you [LSC] for the due performance of all such Security obligations both present and future, and any and all subsequent renewals, continuations, modifications, supplements and amendments thereof, and for the payment of any and all debts of Subject of whatever nature, whether matured or unmatured, whether absolute or contingent and whether now or hereafter existing or arising or contracted or incurred or owing to or acquired by you by assignment, transfer or otherwise.

    Compl. Ex. B.

mitted by the parties show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The court's role is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues which require a trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Summary judgment is "a drastic procedural weapon because 'its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.'" *Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 26 (2d Cir.1988) (citation omitted). Thus, the moving party has the burden of showing the absence of a genuine issue as to any material fact, and the court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Garza*, 861 F.2d at 26. "[N]ot only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

■ In considering a motion for summary judgment, if our analysis reveals that there are no genuine issues of material fact, but that the law is on the side of the non-moving party, we may grant summary judgment in favor of the non-moving party even though it has made no formal cross-motion. *International Union of Bricklayers and Allied Craftsmen v. Gallante*, 912 F.Supp. 695, 700 (S.D.N.Y.1996). Summary judgment may be granted to the non-moving party in such circumstances so long as the moving party has had an adequate opportunity to come forward with all of its evidence. *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F.Supp. 1148, 1152 (E.D.N.Y.1996); *see also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d ed.1983). Notice

to the moving party of the intention to grant summary judgment in favor of the non-moving party is not required; rather, the court must simply be satisfied that the moving party will not suffer any procedural prejudice resulting from an inadequate opportunity to fully present its case. *Coach Leatherware Co. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991). The Second Circuit has made clear that procedural prejudice is not a problem where summary judgment is granted to the non-moving party on an issue which has been fully raised by the moving party. *See id.*

■ As is more fully set forth below, we grant summary judgment *sua sponte* in favor of Defendants because we conclude that Orix's action is barred by the applicable statute of limitations. No procedural prejudice will result from such a decision, because the limitations issue was fully briefed and argued by Orix in its summary judgment motion and the facts underlying the limitations analysis are not in dispute. This is purely a question of law, and as such it is a question which the Court can decide in favor of Defendants without a formal cross-motion on their behalf.

### B. Statute of Limitations

■ Under New York law,[2] a cause of action upon a guaranty is governed by the six-year limitations period applicable to contracts. *See* N.Y. C.P.L.R. § 213(2) (McKinney 1990); *Phoenix Acquisition Corp. v. Campcore, Inc.*, 182 A.D.2d 1101, 586 N.Y.S.2d 162, 163 (1992), *rev'd on other grounds*, 81 N.Y.2d 138, 596 N.Y.S.2d 752, 612 N.E.2d 1219 (1993); 63 N.Y. Jur.2d *Guaranty and Suretyship* § 319 (1987). Such a cause of action accrues, and hence the limitations period begins to run, when the debtor defaults on the underlying obligation. *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 89 N.E.2d 238, 241–42 (1949); *Phoenix Acquisition*, 586 N.Y.S.2d at 163, 63 N.Y.Jur.2d § 319. These well-settled principles are not disputed by Orix.

---

**2.** The Guaranty states that it is governed by New York law, see Compl. Ex. B, and the parties have briefed and argued this motion under New York law. Accordingly, we will apply New York law.

■ Applying these principles, we must conclude that the statute of limitations bars Orix from collecting against the Guarantors for the original 1983 lease obligation owed by U.S. Roofing to LSC. U.S. Roofing's default occurred in 1983 when it ceased making lease payments and LSC accelerated the lease debt. Accordingly, the limitations period for the entire lease debt expired six years later, in 1989. *See Phoenix Acquisition,* 596 N.Y.S.2d at 753–54, 612 N.E.2d at 1220–21 (stating that a cause of action accrues as to the entire indebtedness when the creditor chooses to exercise its acceleration option upon the debtor's default). The Guarantors, who were not parties to the California lawsuit, were sued for the first time when Orix filed the complaint in the current action in 1996. The limitations period thus expired several years before the current action was commenced.

Orix does not dispute this analysis. However, Orix contends that this suit is based not upon the original 1983 lease obligation, but rather upon the 1991 judgment rendered in favor of LSC against U.S. Roofing in the California litigation. Relying upon the common law doctrine of merger, Orix argues that the judgment served to extinguish the original lease obligation, and thus the judgment became a "new" obligation owed by U.S. Roofing to LSC. Orix points to the language of the Guaranty, which covers all debts owed by U.S. Roofing "now or hereafter existing or arising," and contends that the judgment is a debt which is covered by the Guaranty. Hence, according to Orix, this action is timely because it was filed within six years of the entry of the judgment.

■ Under the doctrine of merger, "[w]hen a valid and final personal judgment is rendered in favor of the plaintiff ... [t]he plaintiff cannot thereafter maintain an action on the original claim or any part thereof, although he may be able to maintain an action upon the judgment." Restatement (Second) of Judgments § 18 (1980). Thus, "[plaintiff's] original claim is extinguished and rights upon the judgment are substituted for it." *Id.* cmt. a. The doctrine of merger is based primarily on the policy of preventing multiple lawsuits based on the same cause of action—thus, it is "closely related" to the doctrine of res judicata. *Jay's Stores, Inc. v. Ann Lewis Shops, Inc.,* 15 N.Y.2d 141, 256 N.Y.S.2d 600, 603, 204 N.E.2d 638, 641 (1965).

■ We conclude that New York law does not permit the doctrine of merger to be invoked in the manner suggested by Orix. New York courts have made clear that the doctrine should not be applied in a rigid or technical manner, and that the doctrine does not automatically prevent a court from looking behind a judgment to ascertain the nature of the underlying claim upon which the judgment is based. The primary New York case in this regard is *Jay's Stores, supra.* In that case, the defendant, a foreign corporation authorized to do business in New York, executed a guaranty in New York. *Jay's Stores,* 256 N.Y.S.2d at 602, 204 N.E.2d at 640. Subsequently, the plaintiff sued on the guaranty in Massachusetts state court, obtained a judgment, and then sued the defendant in New York state court to enforce the judgment. *Id.* As an authorized foreign corporation, the defendant was subject to service of process upon the New York Secretary of State for actions "upon any liability or obligation incurred within the State of New York." *Id.* The issue thus became whether the New York suit was an action upon a liability incurred in New York, so as to permit service upon the Secretary of State. The court recognized the issue as follows:

> The main question in the case, however, is whether, because the contract which the Massachusetts court enforced by its judgment was made by defendant in New York, this action on the Massachusetts judgment is to be deemed an action on a "liability or obligation incurred" by the defendant in New York.

> This, in turn, depends on whether there has been such a merger of the original cause of action upon the obligation concededly incurred in New York and the Massachusetts judgment that the judgment has not only become a full substitute for the underlying cause which it adjudicated, but also that an action to enforce the Massachusetts judgment is no longer to be

deemed an action on a liability or obligation incurred in New York.

*Id.* at 602–03, 204 N.E.2d at 640–41.

The court, recognizing that the doctrine of merger is grounded primarily in res judicata principles, concluded that the doctrine should not be extended beyond the res judicata context to preclude all inquiries into the nature of the underlying cause of action upon which a judgment is based:

> But merger by judgment does not destroy all of the identifying characteristics or relationships of the cause of action which the judgment determines; and it seems rather clear that the doctrine was not designed to weaken rights or destroy identities which the prevailing party had in his original cause and which he succeeded in establishing by judgment in his favor. This, then, seems part of the significance of the dictum of Werner, J., in *Walker v. Muir,* 194 N.Y. 420, 423, 87 N.E. 680, 681, that "a judgment is merely the old debt in a new form", a statement which has been widely quoted.

*Id.* at 603, 204 N.E.2d at 641.

After citing several decisions for the proposition that a judgment "does not change the essential nature and real foundation of the cause of action" and thus is not a "new" debt separate from the original claim upon which it is based, the court in *Jay's Stores* concluded that the action before it should be treated as an action upon a liability incurred in New York, since the Massachusetts judgment was based on a guaranty which was executed in New York. *Id.* at 604–05, 204 N.E.2d at 642–43 (citations omitted). The court also put forth the admonition that "the doctrine of merger will not be carried any further than

the ends of justice require." *Id.* at 604, 204 N.E.2d at 642 (citation omitted).[3]

The court in *Jay's Stores* relied on several prior cases, two of which should be noted because they contain language which is highly pertinent to the issue now before this Court. In *Clark v. Rowling,* 3 N.Y. 216 (1850), the New York Court of Appeals considered whether a discharge in bankruptcy which was applicable to debts incurred prior to December 1842 served to bar a suit to enforce an 1843 judgment, where that judgment was based on notes which had been executed in 1840. *Id.* at 218–20. In arguing that the suit was not barred, the plaintiff cited the doctrine of merger for the proposition that the 1843 judgment was a new debt existing independently of the 1840 note debt. *Id.* at 219–20. The court rejected this argument and held that the suit was barred by the discharge:

> It is true, that the notes as evidence of an indebtedness were merged in the judgment; which being greater security, operated to extinguish the lesser; but does it therefore follow, that the judgment to all intents became a new debt, and that the merger or extinguishment of the notes was so complete, as that for the purpose of protecting the defendants in an equity connected with their original indebtedness, we may not look behind the judgment and see upon what it was founded? A judgment, instead of being regarded strictly as a new debt, is sometimes held to be merely the old debt in a new form, so as to prevent a technical merger from working injustice.

*Id.* at 220. Similarly, in *Wisconsin v. Pelican Ins. Co. of New Orleans,* 127 U.S. 265, 8 S.Ct. 1370, 32 L.Ed. 239 (1888), *overruled in part by Milwaukee County v. M.E. White Co.,* 296 U.S. 268, 56 S.Ct. 229, 80 L.Ed. 220 (1935),[4] the Supreme Court considered

---

3. The reasoning of *Jay's Stores* has been followed by the Second Circuit. In *Lewis and Eugenia Van Wezel Foundation, Inc. v. Guerdon Industries, Inc.,* 450 F.2d 1264 (2d Cir.1971), the Second Circuit addressed whether an action upon certain promissory notes was an action based on a transaction of business in New York within the meaning of the long-arm statute, where the notes were originally issued in New York but subsequently replaced by notes issued elsewhere. *Id.* at 1265–67. The Second Circuit held that the action was based on a transaction of business in New York. *Id.* at 1267. Citing *Jay's Stores,* the

Second Circuit concluded that it would be improperly "wooden" and "mechanical" to focus solely upon the replacement notes without considering the place where the original notes were executed. *Id.*

4. *Milwaukee County* overruled *Pelican* to the extent that *Pelican* could be read to suggest that full faith and credit is not required with respect to a judgment unless the original cause of action would have been entitled to like credit. *Milwaukee County,* 296 U.S. at 278, 56 S.Ct. at 234–35.

whether it possessed jurisdiction to hear a suit brought by the State of Wisconsin to enforce a judgment issued in favor of that State against an insurance company which had failed to pay a criminal penalty for neglect of filing requirements. *Id.* at 286–300, 8 S.Ct. at 1372–79. Recognizing that the Court possessed no authority to entertain an action to enforce a state's criminal laws, the Court concluded that it lacked jurisdiction to hear the suit, even though the suit was technically in the form of a civil action to collect on a judgment rather than a criminal action:

> The essential nature and real foundation of a cause of action are not changed by recovering judgment upon it; and the technical rules which regard the original claim as merged in the judgment, and the judgment as implying a promise by the defendant to pay it, do not preclude a court to which a judgment is presented for affirmative action (while it cannot go behind the judgment for the purpose of examining into the validity of the claim) from ascertaining whether the claim is really one of such a nature that the court is authorized to enforce it.

*Id.* at 292–93, 8 S.Ct. at 1374–76.

■ These authorities lead to the conclusion that the 1991 judgment does not create a vehicle for Orix to revive its otherwise time-barred claim against the Guarantors to collect for U.S. Roofing's 1983 lease default.

Under the circumstances presented, the judgment cannot be treated as an entirely "new" debt which serves to re-start the limitations period. The judgment should not serve to preclude us from examining the original lease obligation to determine that Orix's right to sue the Guarantors upon that obligation expired in 1989—before the judgment was entered in 1991 and before this action was filed in 1996. In other words, we are not precluded from ascertaining whether the underlying claim "is really one of such a nature that the court is authorized to enforce it." *Id.* at 293, 8 S.Ct. at 1375. Furthermore, we must point out that Orix's predecessors could have sued the Guarantors within six years after the original default by U.S. Roofing, but failed to do so—a failure for which Orix's predecessors have only themselves to blame.[5] *See Jay's Stores*, 256 N.Y.S.2d 600, 204 N.E.2d at 642 (stating that "the doctrine of merger will not be carried any further than the ends of justice require.") (citation omitted).

Two cases from other jurisdictions have come to the same conclusion in rejecting the precise argument raised by Orix in the statute of limitations context. In *Long Island Trust Co. v. Dicker*, 480 F.Supp. 656 (N.D.Tex.1979), *rev'd on other grounds*, 659 F.2d 641 (5th Cir.1981), the debtor defaulted on a note in May 1973. *Id.* at 657. The creditor then sued the debtor and the guarantor in New York state court, but the guar-

**5.** New York courts have strictly applied the statute of limitations against creditors who have failed to avail themselves of the opportunity to sue guarantors within six years of the debtor's default. For example, in *Gazza v. United California Bank International*, 88 A.D.2d 968, 451 N.Y.S.2d 806 (1982), the creditor had the opportunity to bring a counterclaim against the guarantor in a lawsuit by the guarantor against the creditor which was brought within six years after the debtor's default. *Id.* 451 N.Y.S.2d at 808. However, the creditor failed to do so. *Id.* Then, more than six years after the debtor's default, the creditor sued the guarantor. *Id.* In holding that the creditor's action was barred by the statute of limitations, the court recognized that the creditor had only itself to blame for its failure to take advantage of the chance to counterclaim against the guarantor during the guarantor's lawsuit. *See id.* at 809; *see also Chemical Bank New York Trust Co. v. Amory*, 27 A.D.2d 730, 277 N.Y.S.2d 459, 460–61 (1967) (in holding that creditor's claim against guarantor was time-barred, court

noted that "no obstacle existed to institution of suit against [the guarantor] within the statutory period."), *aff'd*, 21 N.Y.2d 832, 288 N.Y.S.2d 916, 235 N.E.2d 918 (1968). Similarly, Orix's predecessors had the opportunity to sue the Guarantors within six years of U.S. Roofing's 1983 default, but failed to do so. Hence, Orix cannot be heard to complain at the invocation of the statute of limitations.

As an explanation for the failure of its predecessors to sue the Guarantors in a timely fashion, Orix offers the fact that the Guarantors were Nevada residents not subject to jurisdiction in California, and argues that it would have been burdensome for Orix's predecessors to pursue a separate suit against the Guarantors in another jurisdiction while simultaneously pursuing litigation against U.S. Roofing in California. However, as the cases cited in this footnote make clear, a creditor who has failed to make use of available avenues to sue a guarantor in a timely fashion cannot complain when the guarantor raises a limitations defense.

antor was dismissed for lack of personal jurisdiction. *Id.* Judgment was entered against the debtor in the New York action in June 1976. *Id.* Then, in June 1977, the creditor sued the guarantor in the Northern District of Texas. *Id.* The district court concluded that the cause of action against the guarantor accrued upon the debtor's default in May 1973, and thus the suit was barred by Texas's four-year statute of limitations. *Id.* at 658. The district court rejected the creditor's argument that, under the doctrine of merger, the 1976 judgment constituted a "new" debt which was covered by the guaranty's broad language referring to "all liabilities" of the debtor. *Id.* Addressing the issue under both Texas law and New York law, the district court concluded that the doctrine of merger was "inapposite," and that the matter was more properly governed by cases holding that a cause of action on a guaranty accrues from the date of the debtor's initial default. *Id.* Similarly, in *Cadle Co. v. Bianco,* 849 P.2d 437 (Okla.Ct.App.1992), the court concluded that the creditor's action against the guarantors was barred by Oklahoma's five-year statute of limitations, even though the creditor had obtained a judgment against the debtors within five years of the filing of the action against the guarantors. *Id.* at 439–40. The court concluded that an action upon a guaranty must be deemed to accrue on the date of the debtors' default, which had occurred more than five years prior to the filing of the action against the guarantors, and that the doctrine of merger did not serve to create a new cause of action based on the judgment rendered against the debtors:

It is irrelevant whether the cause of action on the guaranty was based on the note or

on the judgment. The judgment against [the debtors] did not create a new cause of action with a new statute of limitations against [the guarantors]. As Plaintiff admits, only the underlying form of the indebtedness changed from a note to a judgment.

*Id.* at 440 (citation omitted).[6]

Orix relies on two cases, *United States v. Hannon,* 728 F.2d 142 (2d Cir.1984), and *Doherty v. Cuomo,* 76 A.D.2d 14, 430 N.Y.S.2d 168 (1980). However, we do not find either of these cases persuasive. In *Hannon,* the Second Circuit concluded that an action to renew a federal money judgment would serve to "revive" an expired lien on the original judgment. *Hannon,* 728 F.2d at 143–45. In *Doherty,* the court mentioned the merger doctrine solely in the context of res judicata. *See Doherty,* 430 N.Y.S.2d at 172. The situations presented in these cases are simply inapposite to the question of the applicability of the merger doctrine in the statute of limitations context. The underlying rationale for permitting the assertion of a limitations defense to grant eventual repose is highly pertinent in the case before us, where there is a thirteen year interval between the date of the default and the first assertion by the creditor of claims against the guarantors.

We find the decisions in *Long Island Trust* and *Cadle* to be entirely persuasive. In light of the decision in *Jay's Stores,* we conclude that a New York court faced with the argument raised by Orix would come to the same conclusion as the Northern District of Texas and the Oklahoma Court of Appeals. We

---

**6.** The *Cadle* court distinguished an earlier Oklahoma case, *Rucker v. Republic Supply Co.,* 415 P.2d 951 (Okla.1966). In *Rucker,* the creditor's action on the guaranty was apparently brought more than five years after the debtor's default, thus bringing into play Oklahoma's five-year statute of limitations. *Id.* at 953. However, the creditor had sued the debtor and obtained a judgment about one year prior to suing the guarantor, and the *Rucker* court held that the limitations period began to run anew when the judgment was issued. *Id.* The *Rucker* court set forth little analysis, aside from the abrupt conclusion that "[a] judgment is a form of indebtedness" which was covered by the guaranty. *Id.* The *Cadle* court distinguished *Rucker* on the ground

that the guaranty in *Rucker* specifically stated that it applied to *judgments* issued against the debtor, while the guaranty in *Cadle* simply referred to any debt then existing or thereafter arising, without specifically referring to judgments. *See Cadle,* 849 P.2d at 439. *Rucker* is distinguishable from the case before us on the same ground, because the Guaranty executed by Defendants does not specifically mention judgments. Furthermore, in light of *Jay's Stores,* we conclude that New York courts would be reluctant to follow a decision which indicates that a judgment rendered against a debtor precludes a court from looking behind the judgment to ascertain whether the limitations period has expired on the underlying debt.

**489**

thus conclude that Orix's cause of action against the Guarantors is barred by the six-year limitations period of N.Y. C.P.L.R. § 213(2).

### III.

### CONCLUSION

For the foregoing reasons, we grant summary judgment in favor of Defendants. Orix's complaint is hereby dismissed.[7]

SO ORDERED.

---

**7.** Because we dismiss this action on statute of limitations grounds, we do not address any of the other issues raised by the parties.